## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDRE HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 13-2005 SLR |
| DELAWARE STATE UNIVERSITY, a ) | |
| Delaware corporation, ) | |
| ) | |
| PAULA DUFFY, Director of Delaware State ) | Non-Arbitration |
| University's Office of Student Judicial Affairs, ) | |
| ) | |
| KEMAL ATKINS, Vice President for Student ) | |
| Affairs at Delaware State University, ) | Demand for Jury Trial |
| ) | |
| and ) | |
| ) | |
| HARRY L. WILLIAMS, President of Delaware ) | |
| State University, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Andre Henry, by and through his attorney, Daniel C. Herr, Esquire, who brings his First Amended Complaint against Defendants Delaware State University, Paula Duffy, Kemal Atkins, and Harry L. Williams and alleges in support as follows.

### FACTS

### Parties

1.   Plaintiff Andre Henry ("Plaintiff) is a Delaware resident who may be contacted for the purposes of this litigation through his counsel, Daniel C. Herr of the The Norman Law Firm, 30838 Vines Creek Road, Unit 3, Dagsboro, DE 19939.

2.   Defendant Delaware State University ("DSU") is a public university, land-grant college, and a Delaware Corporation located at 1200 North DuPont Highway, Dover, Delaware

19901.  DSU can be served care of its President, Harry L. Williams, located at the same address.

3.   Defendant Kemal Atkins ("Atkins") is an adult individual who acted under color of law as an agent and/or employee of Defendant DSU at all relevant times.  Atkins is DSU's Vice President for Student Affairs and handles all questions and issues of interpretation regarding the rules, regulations, policies, or procedures of DSU's Student Judicial System.

4.   Defendant Harry L. Williams ("Williams") is an adult individual who acted under color of law as an agent and/or employee of Defendant DSU at all relevant times.  Williams is DSU's President and has the final authority on all matters of student discipline.

5.   Defendant Paula Duffy ("Duffy") is an adult individual who acted under color of law as an agent and/or employee of Defendant DSU at all relevant times.  Duffy is DSU's Director of Student Judicial Affairs.

### Jurisdiction and Venue

6.   This is a civil action for damages arising under the Fifth and Fourteenth Amendments to the United States Constitution, The Civil Rights Act of 1964 – 42 U.S.C. § 1983 and § 1988.

7.   This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1331, 1343(a)(3) and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

8.   Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

9.   Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this District.

**Common Allegations of Fact**

10. Plaintiff is a twenty-one (21) year-old African-American male.

11. Plaintiff enrolled at DSU as a freshman in or around August 2011.

12. Unfortunately, Plaintiff is an orphan and submitted a letter to DSU informing them of this and declaring his residency in Delaware with a relative (Plaintiff is originally from Philadelphia, Pennsylvania).

13. Currently, Plaintiff is a double major at DSU, majoring in Accounting and Finance.

14. As of the conclusion of his fourth semester in or around May 2011, Plaintiff's Grade Point Average was approximately 3.60.

15. Plaintiff also was a NCAA Division 1 athlete at DSU, representing DSU's Track and Field team as a Sprinting Team Captain.

16. Outside of the classroom and off the track, Plaintiff was a member of both the Accounting Club and the Investment Club.

17. Plaintiff was nominated into the National Honors Society in 2011 and 2012 (but could not afford the membership fees).

18. Plaintiff volunteered with the Senior Olympics in Dover, Delaware.

19. Plaintiff is by all definitions an exemplary student, athlete, and member of DSU's student body.

20. On or about October 21, 2013, Plaintiff engaged in consensual sexual intercourse with another DSU adult student, Chayla Johnson-Tucker ("Tucker"), in Plaintiff's on-campus apartment.

21. Plaintiff was not under the influence of any alcohol or drugs when he did so.

22. Upon information and belief, Tucker was not under the influence of any alcohol or drugs

3

when she engaged in consensual sexual intercourse with Plaintiff.

23. Plaintiff's roommate, Jesse Allen, was present in Plaintiff's on-campus DSU apartment at this time.

24. On or about October 21, 2013, Tucker falsely accused Plaintiff of raping and/or sexually assaulting her.

25. Upon information and belief, Tucker falsely reported these allegations to DSU Public Safety and/or other DSU employees or agents.

26. On or about October 22, 2013, a DSU Public Safety officer or agent called Plaintiff and requested that Plaintiff stop by DSU's Public Safety Office.

27. Plaintiff went to DSU's Public Safety Office.

28. A DSU Public Safety officer read Plaintiff his rights.

29. The officer then questioned Plaintiff about what happened with Tucker.

30. Plaintiff explained that their sexual intercourse was consensual.

31. The officer let Plaintiff leave.

32. On or about October 23, 2013, Plaintiff went about his daily routine.

33. Troubled by his encounter from the previous day, Plaintiff voluntarily went to the DSU Public Safety Office again to inquire as to the status of the false allegations.

34. A DSU Public Safety officer informed Plaintiff that another DSU Public Safety Officer, Patrolman J. Bastianelli, was looking for him.

35. The officer arrested Plaintiff, handcuffing him to a bench.

36. Plaintiff waited for Bastianelli to arrive.

37. Bastianelli arrived and read Plaintiff his rights.

38. Bastianelli questioned Plaintiff about what happened with Tucker.

39.   Plaintiff again explained that their sexual intercourse was consensual.

40.   DSU Public Safety then had Plaintiff arraigned.

41.   Plaintiff was put in prison and held on bail.

42.   On or about October 24, 2013, Plaintiff was charged with Second and Fourth Degree Rape.

43.   The Kent County Court of Commons Pleas scheduled Plaintiff's preliminary hearing for November 1, 2013.

44.   Plaintiff remained in prison until on or about October 31, 2013, when bail was able to be posted on his behalf.

45.   On November 1, 2013, Plaintiff's charges were dismissed via *nolle prosequi* without prejudice.

46.   Upon information and belief, a "rape kit" performed on Tucker recorded negative results.

47.   Also on or about November 1 2013, Plaintiff received several emails from Defendant Duffy.

48.   Defendant Duffy informed Plaintiff that he was "prohibited from entering or being on any University facility or adjacent property pending the outcome of your judicial case."

49.   Plaintiff lived in an on-campus apartment at this time.

50.   Defendant Duffy informed Plaintiff that he could not attend class.

51.   Defendant Duffy informed Plaintiff that if he was found on DSU's campus or "adjacent property," he would be arrested.

52.   Defendant Duffy informed Plaintiff that if he did not abide by these restrictions, further charges would be made against him.

53.   Defendant Duffy informed Plaintiff that he was being charged with "Sexual Assault/Rape" and that this would be processed through DSU's University Judicial System.

54. Defendant Duffy informed Plaintiff that he must have a police escort to come to DSU in order to meet Defendant Duffy.

55. Defendant Duffy informed Plaintiff that a hold had also been placed on his record restricting his ability to register, receive transcripts, and graduate.

56. Plaintiff never had any type of DSU hearing prior to these events.

57. On or about November 1, 2013, Plaintiff also received correspondence from Defendant Duffy informing him that his hearing before the General Judicial Council was scheduled for November 6, 2013 at 3:00 PM.

58. Defendant Duffy informed Plaintiff that he had the right to "student, faculty or staff member of [his] choice" present to be his "advisor."

59. Defendant Duffy informed Plaintiff that he may also bring witnesses on his behalf.

60. Defendant Duffy informed Plaintiff that Tucker and Patrolman J. Bastianelli may be called by the university to give testimony at this hearing.

61. Plaintiff was not informed of his right to have an attorney present on his behalf.

62. In fact, Defendant Duffy informed Plaintiff of the only individuals that could be present at the hearing, an attorney not being one of them, thereby informing Plaintiff that he could not have an attorney at the hearing.

63. On or about November 6, 2013, Plaintiff attended his hearing before the General Judicial Council.

64. Tucker was not present at this hearing.

65. Plaintiff explained what happened, all of which was tape-recorded.

66. Plaintiff was never advised of his right to an attorney at the hearing, his right to remain silent, or his right against self-incrimination.

67. Jesse Allen testified on Plaintiff's behalf that he was present at Plaintiff's and Jesse Allen's apartment, in the apartment's "common room," the evening Plaintiff and Tucker engaged in consensual sex.

68. Jesse Allen testified that Tucker never screamed for Plaintiff to stop, as Tucker had, upon information and belief, previously alleged that she had.

69. Randy Smith, Plaintiff's Academic-Athletic Advisor at DSU, testified on Plaintiff's behalf concerning Plaintiff's exemplary character and status as a DSU student and athlete.

70. The General Judicial Council made no decision after the hearing on or about November 6, 2013.

71. Upon information and belief, the General Judicial Council submitted its recommendations concerning Plaintiff to Defendant Atkins after the November 6, 2013 hearing, before Plaintiff exercised his right to cross-examine Tucker.

72. After November 6, 2013, Plaintiff received no decision concerning the charges against him from the General Judicial Council or Defendants.

73. Accordingly, Plaintiff remained suspended from classes, prohibited from being on DSU's campus, and prohibited from residing in his own apartment.

74. On December 12, 2013, Defendant Duffy sent Plaintiff an incorrect notice dated November 1, 2013, notifying Plaintiff that a hearing was scheduled for November 6, 2013.

75. This notice was identical to that Plaintiff had actually received on November 1, 2013.

76. Thereafter, also on December 12, 2013, Defendant Duffy sent Plaintiff another incorrect notice dated November 1, 2013, notifying Plaintiff that a hearing was scheduled for November 6, 2013.

77. This notice was also identical to the notice Plaintiff had actually received on November 1,

2013.

78.   Thereafter, also on December 12, 2013, Defendant Duffy sent Plaintiff another notice, also incorrectly dated November 1, 2013, notifying Plaintiff that there would be a hearing before the General Judicial Council the following day, December 13, 2013 at 9:30 AM.

79.   Besides the change of date as set forth in the preceding paragraph, the notice was identical to that Plaintiff had actually received on November 1, 2013.

80.   Although again not advised to his right counsel, Plaintiff attended the December 13, 2013 hearing with counsel.

81.   Tucker testified at the December 13, 2013 hearing.

82.   Upon information and belief, the General Judicial Council submitted supplemental recommendations to Defendant Atkins after the December 13, 2013 hearing.

83.   Plaintiff remained suspended from classes, prohibited from being on DSU's campus, and prohibited from residing in his own apartment after the December 13, 2013 hearing through December 16, 2013.

84.   On December 16, 2013, Defendant Duffy wrote Plaintiff a letter informing him that he was found "Not Responsible" for the allegations against him.

85.   The letter incorrectly set forth that Defendant Duffy had "recently" obtained information concerning the allegations against Plaintiff, being that she had obtained this information close to two (2) months prior.

86.   The letter also incorrectly set forth that Plaintiff had attended a "Formal Hearing," when it fact Plaintiff had attended two (2) Formal Hearings.

87.   The letter indicated that a record of the "incident" will be maintained in the Office of Student Judicial Affairs according to University policy for five years from the date of

Plaintiff's matriculation to the University.

88.   The letter also indicated that Plaintiff should familiarize himself with the rules and regulations that govern DSU student behavior.

89.   The letter also set forth that Defendant Duffy hoped there would be "no recurrence of this or any other offense in the future and that the remainder of [Plaintiff's] stay at Delaware State University is successful."

90.   This decision came three days after fall semester 2013 finals had concluded and at a time when DSU was "shut down" for winter break.

## DSU POLICIES

91.   DSU Judicial Affair's "Frequently Asked Questions" information indicates that attorneys are not allowed at Judicial Hearings.

92.   DSU sets forth "The Rights of the Student in Judicial System," which does not include the right to have an attorney present at Judicial Hearings.

93.   The DSU Judicial Affairs Handbook sets forth the following pertinent rules and instructions:

   a.   The purpose and philosophy of the Student Judicial System is to "provide due process prior to imposing sanctions."

   b.   The president of DSU has "the final authority on all matters of student discipline. However, any question of interpretation regarding the rules, regulations, policies, or procedures of the Student Judicial System shall be referred to the Vice President for Student Affairs or designee for final determination."

   c.   "The Vice President for Student Affairs will administratively address any issue not covered in the Judicial System."

9

d.  Sexual Assault and Rape are "Most Severe Violation," for which Plaintiff could be expelled and which carries a minimum sentence of one year of suspension.

e.  Normally a "speedy adjudication" takes place for a "Most Severe Violation" within two to five academic days from the time the infraction report.

f.  DSU has discretion to immediately dismiss a most severe violator that is "deemed dangerous or a threat to self or others," prior to any adjudication.

g.  An accused may cross-examine his accuser.

h.  "When the director of Office of Student Judicial Affairs is present at hearings conducted by councils, they . . . serve to ensure that the councils have all of the information they need to conduct hearings fairly."

i.  It is the responsibility of the "director of Office of Student Judicial Affairs to ensure that all witnesses are present, that proper procedures are followed, and to answer any policy or procedural questions posed by council members, the accused student, or others involved in the hearing process."

j.  DSU may hand down a temporary or interim suspension to maintain DSU safety pending a full hearing on the alleged violation.

k.  The Vice President for Student Affairs or a designee will conduct an "informational hearing" to determine if the student is a danger and immediately thereafter make the determination of whether to continue temporary suspensions or other interim sanctions within one to two days.  "Danger" typically comes from weapons (such as guns) or possession of large quantities of drugs.

l.  Where an interim sanction or suspension is imposed, a full hearing on the merits should typically be conducted within seven academic days and a final decision

10

issued within ten academic days.

m. "Temporary suspensions can only be imposed by the Vice President for Student

Affairs or designee . . .."

n. "Where interim sanctions are imposed, a full hearing on the merits should

typically be conducted within seven (7) academic days, and a final decision issued

with ten (10) academic days."

o. "If a final decision cannot be rendered within this time, the Vice President for

Student Affairs or designee will review the appropriateness of continuing interim

sanctions."

p. "If the hearing must be continued to a second day, the hearing council will

schedule the next hearing date, time, and place, and forward this information to

the director of Student Judicial Affairs.  Hearings must be completed within four

(4) days of when they are started, except with the consent of all parties or

approval of the Vice President for Student Affairs."

q. A student's disciplinary records will be retained for no less than five years after a

student leaves DSU.

r. DSU will release student files, including disciplinary records, under certain

circumstances.

**COUNT I:  VIOLATION OF 42 U.S.C. §1983 BASED ON FAILURE TO PROVIDE
PROCEDURAL DUE PROCESS PRIOR TO DEPRIVING PLAINTIFF OF PROPERTY
– DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES**

94. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this

complaint, above and below, as though fully set forth herein.

95. On or about November 1, 2013, the State of Delaware dropped all charges against Plaintiff

via *nolle prosequi*.

96.  On or about November 1, 2013, Defendants suspended Plaintiff from DSU indefinitely.

97.  On or about November 1, 2013, Defendants restricted Plaintiff from being on DSU property, where Plaintiff lived at the time, indefinitely.

98.  Defendants afforded Plaintiff no notice or hearing or other opportunity to defend himself prior to their deprivation of Plaintiff's property interest in education.

99.  On or about November 6, 2013, Defendants afforded Plaintiff a hearing, albeit inadequate and unconstitutional (addressed below), wherein Plaintiff was given some opportunity to defend himself.

100.  Thereafter, Plaintiff remained suspended from DSU classes, prohibited from being on DSU's campus, and prohibited from residing at his on-campus apartment while DSU prepared and continues to prepare to execute their remaining unconstitutional and inadequate process concerning their prior deprivation of Plaintiff's property interest in education.

101.  Plaintiff remained suspended from DSU classes, prohibited from being on DSU's campus, and prohibited from residing at his on-campus apartment until December 16, 2013.

102.  As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

## COUNT II:  VIOLATION OF ARTICLE 1, SECTION 7 OF THE DELAWARE CONSTITUTION BASED ON FAILURE TO PROVIDE PROCEDURAL DUE PROCESS PRIOR TO DEPRIVING PLAINTIFF OF PROPERTY – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL CAPACITIES

103.  Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this

complaint, above and below, as though fully set forth herein.

104. As has been set forth herein, Defendants deprived Plaintiff of property without procedural due process, which is also in violation of Plaintiff's rights under Article 1, Section 7 of the Delaware Constitution.

105. Defendants did so with wanton negligence, failing to provide Plaintiff with procedural due process for forty-five (45) days.

106. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, property damage, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT III:  VIOLATION OF 42 U.S.C. §1983 BASED ON FAILURE TO PROVIDE PROCEDURAL DUE PROCESS PRIOR TO DEPRIVING PLAINTIFF OF LIBERTY – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

107. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

108. Plaintiff was suspended from classes and prohibited from being on DSU's campus as a result of Tucker's false allegations.

109. This was done prior to an appropriate constitutional investigation, notice, and hearing, as has been set forth in this Complaint.

110. These punishments created the false stigma that Plaintiff is in fact a rapist or sexual assaulter prior to constitutional due process to address Tucker's allegations.

111. These punishments also altered and extinguished Plaintiff's previous rights and status as a DSU student and DSU resident, as Plaintiff was barred from attending class and prohibited from residing at his on-campus apartment.

112. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT IV:  VIOLATION OF ARTICLE 1, SECTION 7 OF THE DELAWARE CONSTITUTION BASED ON FAILURE TO PROVIDE PROCEDURAL DUE PROCESS PRIOR TO DEPRIVING PLAINTIFF OF LIBERTY – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL CAPACITIES**

113. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

114. As has been set forth herein, Defendants deprived Plaintiff of liberty without procedural due process, which is also in violation of Plaintiff's rights under Article 1, Section 7 of the Delaware Constitution.

115. Defendants did so with wanton negligence, failing to provide Plaintiff with procedural due process for forty-five (45) days.

116. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, property damage, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT V:  VIOLATION OF 42 U.S.C. §1983 BASED ON INADEQUATE PROCEDURAL DUE PROCESS, DENIAL OF THE RIGHT TO CROSS-EXAMINE TUCKER – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

117. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

118. Tucker was not present at the hearing on or about November 6, 2013.

119. Upon information and belief, this was at the behest of Defendants Atkins, Williams, and Duffy.

120. Thereafter, Plaintiff remained suspended and prohibited from being on DSU's campus until December 16, 2013.

121. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT VI:  VIOLATION OF ARTICLE 1, SECTION 7 OF THE DELAWARE CONSTITUTION BASED ON INADEQUATE PROCEDURAL DUE PROCESS, DENIAL OF THE RIGHT TO CROSS-EXAMINE TUCKER – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL CAPACITIES**

122. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

123. As has been set forth herein, Defendants did not allow Plaintiff to face and cross-examine his accuser, Tucker, at the November 6, 2013 hearing.

124. Defendants did so with wanton negligence, especially considering that Tucker's allegations against Plaintiff were wholly-disputed.

125. Defendants also acted with wanton negligence, not allowing Plaintiff the opportunity to cross-examine Tucker until December 13, 2013.

126. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, property damage, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT VII:  VIOLATION OF 42 U.S.C. §1983 BASED ON INADEQUATE DUE**

**PROCESS, FAILURE TO AFFORD PLAINTIFF COUNSEL – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

127. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

128. Defendant Duffy informed Plaintiff he could not have an attorney present at the November 6, 2013 hearing.

129. On or about November 6, 2013, Plaintiff attended his hearing before the General Judicial Council without an attorney.

130. Plaintiff explained what happened, without an attorney present to protect his Fifth Amendment right against self-incrimination.

131. As a result, Plaintiff suffered a violation of his Constitutional rights and other damages.

**COUNT VIII:  VIOLATION OF 42 U.S.C. §1983 BASED ON VIOLATION OF FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION – DEFENDANTS ATKINS, WILLIAMS, AND DUFFY IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

132. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

133. On or about November 6, 2013, Plaintiff attended his hearing before the General Judicial Council without an attorney.

134. Plaintiff explained what happened, without an attorney present to protect his Fifth Amendment right against self-incrimination.

135. Plaintiff was never advised of his right to remain silent.

136. As a result, Plaintiff suffered a violation of his Constitutional rights and other damages.

**COUNT IX:  VIOLATION OF 42 U.S.C. §1983 BASED ON FAILURE TO SUPERVISE, DELIBERATE INDIFFERENCE – DEFENDANTS ATKINS AND WILLIAMS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

137. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this

complaint, above and below, as though fully set forth herein.

138. Defendant Williams exhibited deliberate indifference in his supervision of Defendants Atkins and Duffy by allowing them to repeatedly violate Plaintiff's Constitutional rights as has been set forth herein.

139. Defendant Atkins exhibited deliberate indifference in his supervision of Defendant Duffy by allowing her to repeatedly violate Plaintiff's Constitutional rights as has been set forth herein.

140. Some of these violations were ongoing for forty-five (45) days.

141. Upon information and belief, Defendant Williams had knowledge, or should have had knowledge, of Defendants Atkins and Duffy's acts and omissions concerning Plaintiff.

142. Upon information and belief, Defendant Atkins had knowledge, or should have had knowledge, of Defendants Duffy's acts and omissions concerning Plaintiff.

143. Nonetheless, Defendants Williams and Atkins failed to act to resolve ongoing and future violations of Plaintiff's Constitutional rights.

144. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

## COUNT X:  NEGLIGENT SUPERVISION – DEFENDANTS ATKINS AND WILLIAMS IN THEIR INDIVIDUAL CAPACITIES

145. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

146. Defendant Williams had a duty to supervise Defendants Atkins and Duffy, and Defendant Atkins had a duty to supervise Defendant Duffy.

17

147. Defendants Williams and Atkins failed to exercise their supervisory duties by, *inter alia*, allowing and failing to stop Defendants Atkins and Duffy's violations of Plaintiff's Constitutional rights as has been set forth herein.

148. Defendants Williams and Atkins's failures were with wanton negligence as they knew or should have known about Plaintiff's ongoing Constitutional violations for forty-five (45) days yet did nothing to protect Plaintiff's rights.

149. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, property damage, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

**COUNT XI:  VIOLATION OF 42 U.S.C. §1983 *MONELL* CLAIM – DEFENDANT DSU**

150. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint, above and below, as though fully set forth herein.

151. Prior to the events described herein, DSU developed and maintained policies, practices, regulations, and/or customs exhibiting deliberate indifference to the constitutional rights of persons that attended DSU, which were the direct and proximate cause of the violations of Plaintiff's constitutional rights.

152. DSU had a policy, practice, regulation and/or custom of unconstitutionally depriving its students of liberty and property prior to procedural due process, at the discretion of DSU's employees and agents.

153. DSU had a policy, practice, regulation and/or custom of depriving its students of the right to counsel at disciplinary hearings, wherein a students' Fifth Amendment right against self-incrimination is implicated.

154. DSU had a policy, practice, regulation and/or custom of violating its students Fifth Amendment right against self-incrimination by, including but not limited to, not advising students of their right to remain silent.

155. DSU had a policy, practice, regulation and/or custom of disallowing accused students to confront and cross-examine their accusers.

156. DSU failed to provide its employees and agents proper training, including but not limited to, concerning the aforementioned unconstitutional policies, practices, regulations and/or customs.

157. The above-described acts and omissions, policies, practices and/or customs by DSU demonstrated a deliberate indifference to the constitutional rights of DSU students and were the direct and proximate cause of the violations of Plaintiff's constitutional rights as set forth herein.

158. The Constitutional violations alleged herein were also at the behest of Defendants Williams and Atkins, whose edicts and acts represented DSU's official policies.

159. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including but not limited to his suspension, economic damages, lost opportunity to learn, psychological and emotional distress and anguish, embarrassment and humiliation, and damage to his reputation.

## **PRAYER FOR RELIEF**

WHEEFORE, Plaintiff prays for judgment against Defendants as follows:

A.    All lawful damages, including compensatory damages in an amount to be determined, against all Defendants.

B.    Nominal damages.

C.    Punitive damages in an amount sufficient to punish Defendants and discourage them and others from engaging in similar conduct in the future.

D.    Injunctive relief mandating that DSU and its agents and employees, including the Defendants, turn over all any and all documents and other recordation of the allegations and charges against Plaintiff, Plaintiff's suspensions from DSU and DSU's campus, the investigation and hearings thereafter, and any recommendations and conclusions thereafter to Plaintiff's Counsel and retain no copies of any of the aforementioned.

E.    Injunctive relief enjoining DSU and its agents and employees, including the Defendants in this matter, from disclosing the nature and existence of the allegations and charges against Plaintiff, Plaintiff's suspensions from DSU and DSU's campus, the investigation and hearings thereafter, and any recommendations and conclusions thereafter to any third parties unless it be Court Ordered.

F.    Injunctive relief mandating that DSU implement Constitutional policies, procedures, regulations, and/or customs as may be necessary to prevent a recurrence of the illegal and unconstitutional activities described herein.

G.    Injunctive relief mandating training to DSU agents and/or employees, including the Defendants, as may be necessary to prevent a recurrence of the illegal and unconstitutional activities described herein.

H.    Plaintiff's costs in this action, including reasonable attorney fees pursuant to 42 U.S.C. §1983 and pre and post-judgment interest.

I.    Such other relief as this Court deems just and equitable.

J.    Trial by Jury.

Respectfully Submitted,

**THE NORMAN LAW FIRM**

Date:  December 27, 2013

*/s/Daniel C. Herr_____*
Daniel C. Herr, Esquire, Bar. I.D. 5497
30838 Vines Creek Rd., Unit 3
Dagsboro, Delaware  19939
302-595-9084
DHerr@TheNormanLawFirm.com
*Attorney for Plaintiff*

21